# Exhibit A

RECEIVED
CUSTOMER SERVICE TEAM

OCT 28 2025

**SUPERIOR COURT OF NEW JERSEY**

**LAW DIVISION – HUDSON COUNTY**
**CIVIL PART**

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #5

TONY PARRISH, individually and as parent and natural guardian of minor child J.P.,
Plaintiff,

v.

THE HUDSON SCHOOL, Rebekah Sollitto, Emily Ford Systma, Daniel J. Gans, Cliff Sonkin, Arnold Lewis, Paul O'Dell, Melissa Popkoski, Flora Ekpe-Idang, Pete Gilchrist, Tom Horan, Alice Kocis, David Muhlenkamp, Luisa Pasacios, Minalkumar Patel, M.D., Korey Petgrave, and Zemin Zhang
Defendants.

Docket No.: L4097-25

---

**VERIFIED AMENDED COMPLAINT AND JURY DEMAND FOR DAMAGES AND INJUNCTIVE RELIEF**

This Verified Amended Complaint is filed solely to correct and expand the caption to list all defendants by name, as requested by the Clerk's Office, without altering the substantive allegations or causes of action contained in the original complaint.

---

## PARTIES

1. **Plaintiff Tony Parrish** is an adult resident of Hudson County, New Jersey, and the parent and natural guardian of minor child **J.P.**, referred to herein as "the Child." Plaintiff brings this action individually and on behalf of his minor child to redress violations of his civil, statutory, and common-law rights arising from the conduct of The Hudson School and its agents.

2. **Defendant The Hudson School** ("Hudson" or "the School") is a New Jersey nonprofit educational corporation located in Hoboken, Hudson County. At all relevant times Hudson operated a private K–12 school and was responsible for (a) supervision of its

1

staff and administrators, (b) enforcement of institutional policies, and (c) compliance with state laws governing privacy, safety, and nondiscrimination.

3. **Defendant Rebekah Sollitto** is the **Head of School** at Hudson and its chief executive officer. Sollitto exercised overall administrative authority and is directly responsible for the acts, omissions, and retaliatory actions alleged herein. She is sued **individually and in her official capacity**.

4. **Defendant Emily Ford Systma** is the **Lower School Principal**, responsible for supervision of faculty, student discipline, and communications with parents. Systma personally participated in and/or ratified the false and retaliatory reporting alleged herein and is sued **individually and in her official capacity**.

5. **Upon information and belief, Defendants Daniel J. Gans (Board President), Cliff Sonkin (Vice President), Arnold Lewis (Trustee), Paul O'Dell (Treasurer), Melissa Popkoski (Secretary), Flora Ekpe-Idang (Trustee), Pete Gilchrist (Trustee), Tom Horan (Trustee), Alice Kocis (Trustee), David Muhlenkamp (Trustee), Luisa Pasacios (Trustee), Minalkumar Patel, M.D. (Trustee), Korey Petgrave (Trustee), and Zemin Zhang (Trustee) (collectively, the "Board Defendants") constituted the duly elected Board of Trustees of The Hudson School during the period relevant to this Complaint.** At all times relevant, the Board Defendants were responsible under **N.J.S.A. 15A:6-1 et seq.** for governing the corporation, establishing and enforcing policy, supervising administrators, and ensuring compliance with New Jersey law. Each Board Defendant owed fiduciary duties of care, loyalty, and oversight to Hudson's students and parents. Each is sued **individually and in an official capacity** for:

2

- (a) **Negligent supervision and retention of administrators** after the Board Defendants had, or in the exercise of reasonable diligence should have had, notice—whether actual or constructive—that administrators engaged in retaliatory or discriminatory conduct; such notice arose from parental complaints, internal discussions, and other circumstances sufficient to alert a prudent board to the misconduct, yet the Board failed to investigate or act.

- (b) **Failure to adopt or enforce adequate data-privacy, parental-communication, and retaliation-prevention policies;** and

- (c) **Ratification or acquiescence** in the actions of Defendants Sollitto and Systma.

6. **John and Jane Doe Defendants 1–20** are individuals or entities whose identities are presently unknown but who participated in, assisted, or ratified the acts alleged herein. Plaintiff will amend this Complaint to substitute their true names and capacities when discovered.

7. Each Defendant acted individually and in concert with the others. At all times relevant, the individual Defendants were agents, employees, or officers of The Hudson School acting within the scope of their employment or authority, except where specifically alleged that they acted **outside such scope and in bad faith.**

---

## JURISDICTION AND VENUE

8. This Court has jurisdiction under **N.J. Const. art. VI, § 3, ¶ 2** and **N.J.S.A. 2A:3-1 et seq.** because all causes of action arise under the laws and Constitution of the State of New Jersey.

3

9. Venue lies in Hudson County pursuant to **R. 4:3-2(a)** because the events and omissions giving rise to these claims occurred in Hoboken, New Jersey, where Defendants conduct business and Plaintiff resides.

10. Although the facts alleged also implicate rights co-extensive with those protected by the United States Constitution, Plaintiff at this time seeks relief **solely under New Jersey law**, including but not limited to:

   • The **New Jersey Civil Rights Act**, N.J.S.A. 10:6-1 et seq.;

   • The **New Jersey Constitution**, Article I, Paragraphs 1, 5, 6 and 7;

   • The **New Jersey Consumer Fraud Act**, N.J.S.A. 56:8-1 et seq.;

   • The **New Jersey RICO Act**, N.J.S.A. 2C:41-1 et seq.;

   • and the common law of New Jersey (negligence, misrepresentation, defamation, invasion of privacy, breach of fiduciary duty, and related torts).

11. Plaintiff expressly **reserves the right to amend** this complaint to assert additional causes of action, including those under federal law, should discovery reveal facts that warrant such relief.

12. Facts concerning Plaintiff's minor child are included solely to provide context for the alleged interference with Plaintiff's parental rights and duties. The child's individual claims are reserved to be asserted, if appropriate, through appointment of a **Guardian ad Litem** or **next friend** upon order of this Court.

13. **Reserved Federal-Action Allegation:**

   Plaintiff further alleges, upon information and belief, that The Hudson School and its administrators communicated routinely with agents of the Division of Child Protection and Permanency and with members of the Bayonne Police Department concerning

4

Plaintiff's private affairs. These communications appear to have included the exchange of personal data and updates on Plaintiff's whereabouts and activities. Plaintiff reserves the right to amend this Complaint under Rule 4:9-1 to add the appropriate state and municipal actors and to assert corresponding federal claims under 42 U.S.C. § 1983 should discovery confirm that such coordination constituted joint action or state-directed surveillance.

14. Federal statutes such as FERPA and COPPA and child-protection provisions including N.J.S.A. 9:6-8.10 et seq. are cited herein solely as persuasive authorities establishing duties and standards of care, not as independent causes of action."

## PREAMBLE AND BACKGROUND

15. This case arises from the story of a single Black father—a man of deep faith and conviction—who believed that the education of his child should begin not merely with intellect, but with the heart and the spirit. As an ordained minister, Plaintiff entrusted his son to *Mustard Seed Christian School* beginning in 2020, drawn to its founding promise: a Christ-centered education rooted in love, humility, and individualized care. He chose Mustard Seed because it embodied the values that mirrored his own faith—truth, nurture, and the belief that every child is fearfully and wonderfully made.

16. When The Hudson School acquired Mustard Seed, Plaintiff prayed earnestly and, despite hesitation, chose to remain. He believed that the soul of the Mustard Seed would continue to guide the new administration—that the light of Christ would not be extinguished in the shadow of institutional change. For a time, he held onto hope. But over the years, the shift became undeniable: what was once a nurturing Christian community transformed

into a metrics-driven institution concerned less with children as living souls and more with performance data, marketing, and appearances. The compassion and transparency that once characterized the school's leadership were replaced by defensiveness, secrecy, and hostility toward parental engagement.

17. The Plaintiff's faith teaches him to seek understanding, to test all things, and to hold fast to what is good. When a representative from a major technology company privately expressed concern to him about potential *parental consent and data privacy violations* involving his child's digital learning tools, he did not rush to accuse—he asked questions. He sought clarity and accountability, in good faith, from the very people entrusted with his child's education.

18. But the moment he began to ask, the walls went up.

Communication that had once been warm turned cold.

Meetings once collaborative became adversarial.

In place of openness came retaliation.

19. Rather than address his legitimate privacy and faith-based concerns, administrators at The Hudson School responded with aggression, fabricating false narratives, and eventually weaponizing state mechanisms against him. False and malicious reports were made to the Division of Child Protection and Permanency (DCPP), designed not to protect the child but to discredit and destabilize the father. The administrators' actions were deliberate, coordinated, and cruel—using state reporting systems as instruments of retaliation to silence a parent who had simply exercised his right to ask questions about his child's digital safety and moral upbringing.

6

20. These actions violated not only civil and parental rights but also the sacred trust between parent and school—a trust founded on faith and love for the well-being of a child. In mocking his spiritual discernment, misrepresenting his intentions, and conspiring to portray his vigilance as instability, Defendants demonstrated not merely bias but spiritual contempt. The Plaintiff was persecuted for his faith, his race, and his refusal to yield to institutional deceit.

21. What began as a partnership in faith-based education devolved into a campaign of intimidation and defamation. Yet, through it all, the Plaintiff remains steadfast in his calling—as a father, as a minister, and as a servant of God—to stand for truth, to expose injustice, and to protect the divine innocence of his child. This Complaint is not merely a plea for damages; it is a declaration that faith, family, and truth shall not be subverted by deception, retaliation, or fear.

## STATEMENT OF FACTS

22. Beginning in or about **October 2024**, Plaintiff, a single Black father and ordained Christian minister, received a series of communications from **Apple Inc.** regarding suspected **unauthorized access and misuse of his minor child's digital information** through an educational software vendor known as **IXL Learning, Inc.**

23. Apple representatives conducted multiple discussions with Plaintiff via **FaceTime**, during which they explained Apple's **privacy principles—particularly those protecting children's data**—and expressed concern that his child's account activity suggested **third-party data interception** inconsistent with Apple's privacy standards.

24. Plaintiff, guided by his faith and spiritual discernment grounded in Scripture (see *2 Timothy 1:7* and *Proverbs 25:2*), **prayed and undertook a conscientious investigation** to ensure the safety and privacy of his child's devices and information.

25. In good faith, Plaintiff **examined his child's personal and school-issued devices,** discovering indications of **spyware or intrusive software**. He reported these findings to multiple authorities, including **local law enforcement and technology service providers**, but received no meaningful assistance beyond temporary resets or device wipes.

26. Concerned that the same vulnerabilities might exist within school-managed platforms, Plaintiff researched the **value and uses of children's educational data**—including its potential sharing with **data brokers, law-enforcement contractors, and behavioral-analytics firms**—and grew increasingly troubled by the absence of transparency or consent mechanisms.

27. In late 2024 and early 2025, Plaintiff approached The Hudson School in Hoboken, where his child was enrolled, to request disclosure of the school's third-party software relationships and privacy safeguards, acting under his rights as parent and legal guardian pursuant to FERPA and N.J.S.A. 18A:36-39.

28. Defendant Emily Ford Systma, the Lower School Head, expressed unfamiliarity with basic data-privacy obligations, which Plaintiff found alarming given her supervisory authority over children's technology use.

29. As Plaintiff continued seeking clarification, his inquiries—initially respectful and faith-grounded—were increasingly met with defensiveness. Administrators began portraying his persistence as disruptive rather than protective.

8

30. Instead of addressing his concerns, Defendants Systma and Sollitto deflected responsibility, instructing Plaintiff to contact external vendors such as IXL Learning, Clever, and Catapult Learning. Those vendors either failed to respond or refused to explain how children's personal identifiers and educational metrics were stored, shared, or monetized.

31. After weeks of unanswered requests, Plaintiff notified the school that, absent transparency, he intended to **exercise his parental right to revoke or limit consent** for data sharing until compliance documentation was produced.

32. The school's leadership viewed this assertion of parental authority as a challenge to their institutional control.

33. Within days of Plaintiff's lawful notice limiting data-sharing consent—and amid ongoing communications between the Hudson School and Bayonne Police Department whose precise origin remains unknown—Defendants Emily Ford Systma and/or other Hudson officials submitted a retaliatory child-abuse referral to the New Jersey Division of Child Protection and Permanency ("DCPP"). The referral alleged that Plaintiff failed to provide food, that his child's clothing was "tight-fitting," and that Plaintiff was "in mental decline." These racially-coded accusations ignored documented medical evaluations already clearing both father and child of any safety or health concerns. Whether or not the referral stemmed from prior police contact, Defendants had an **independent statutory duty** to assess the truth and currency of such information before escalating to DCPP. Their decision to advance discredited and prejudicial claims constituted **reckless disregard and bad faith**, not "good-faith reporting," and thus falls outside any

mandated-reporting immunity. DCPP's own investigation later classified the referral as **"Not Established,"** confirming the absence of evidence or neglect.

34. Notably, the Bayonne Police Department—despite possessing full knowledge of Plaintiff's multiple mental-health clearances by the Jersey City Medical Center Mobile-Crisis Unit—did not report directly to DCPP, as they were lawfully empowered to do under N.J.S.A. 9:6-8.10. Instead, police communications appear to have been funneled through Hudson School administrators, who reconstituted the same discredited mental-health themes into a new "food and clothing" narrative. This indirect approach served two purposes: to create a more sympathetic and racially resonant pretext for state intervention ("Black child appears hungry") and to distance the police from direct accountability for filing a false or duplicative report. The resulting DCPP referral thus functioned as a **continuation of a coordinated harassment pattern**, enabling the Division to prolong its involvement despite prior medical and factual exonerations. The collaboration between school officials and local law enforcement thereby weaponized mandated-reporting mechanisms as instruments of reputational harm and state surveillance.

35. Despite being in possession of multiple professional evaluations confirming that both father and child were healthy, stable, and free from any safety or psychiatric concerns, the Division of Child Protection and Permanency ("DCPP") nonetheless accepted and prolonged the Hudson School referral as an open case. DCPP investigators had direct access to the Jersey City Medical Center / RWJBarnabas Health Mobile-Crisis records— each finding Plaintiff fully oriented and not a danger to self or others, and the minor child "healthy and no concerns observed." Rather than closing the matter upon receipt of these

10

dispositive clearances, the agency selectively ignored the medical evidence and reframed the referral from "neglect" to "mental-health monitoring," thereby extending jurisdiction that should have lawfully terminated. This pattern of willful disregard transformed what began as a baseless "food and clothing" report into a tool of ongoing surveillance and reputational harm. By allowing disproven and racially coded allegations to persist, the Division departed from its statutory duty of neutrality and became an active participant in a coordinated effort to suppress Plaintiff's constitutionally protected advocacy concerning government surveillance, electronic interference, and faith-based parental rights.

36. As a direct result of Defendants' coordinated and malicious misuse of mandated-reporting procedures, Plaintiff and his child endured months of unwarranted surveillance, reputational defamation, and emotional distress. DCPP caseworkers made repeated, intrusive contacts at home and school, each premised on discredited claims and racially biased assumptions that pathologized a Black father's vigilance as instability. The existence of an open child-protection case—though unsupported by evidence—was itself weaponized to isolate Plaintiff from his community, stigmatize his ministry, and undermine his credibility as both parent and minister. These actions disrupted the child's education, eroded trust in his school environment, and inflicted lasting fear of institutional betrayal. By ignoring medical clearances and perpetuating a known false narrative, the Defendants collectively converted a legally "Not Established" matter into a continuing mechanism of harassment and intimidation. The injuries sustained include psychological trauma, reputational injury, spiritual distress, and measurable interference

11

with Plaintiff's professional, parental, and ministerial responsibilities—all proximately caused by the Defendants' retaliatory and discriminatory conduct.

37. Taken together, these events reveal not isolated misunderstandings but a coordinated pattern of retaliation and institutional abuse. What began as a father's lawful, faith-driven inquiry into data privacy and educational accountability evolved—through collusion among school officials, local police, and DCPP—into a campaign of manufactured neglect allegations, racial profiling, and procedural harassment. Each actor invoked official authority under the guise of "child protection," while disregarding clear medical and factual evidence that no risk existed. This misuse of state mechanisms violated Plaintiff's fundamental rights to due process, equal protection, free exercise of religion, and parental autonomy under both the United States and New Jersey Constitutions. The conduct described herein constitutes retaliation for protected speech and religious expression, abuse of process under color of law, and discriminatory treatment based on race and faith. These facts collectively form the basis for the Counts set forth below.

38. *These coordinated acts did not occur in isolation but reflected a deeper pattern of organized cooperation among public and private entities. The evidence shows a recurring alignment between school administrators, local law-enforcement officials, and child-protection agents operating with shared intent and information flow—a structure that, taken together, functions as a single retaliatory enterprise under New Jersey RICO standards.*

39. The events described herein were not isolated administrative errors but manifestations of a coordinated enterprise involving both public and private actors—specifically The Hudson School, the Bayonne Police Department, and the New Jersey Division of Child

Protection and Permanency ("DCPP"), operating through shared communications and mutual objectives. This informal network functioned as an association-in-fact enterprise within the meaning of *N.J.S.A. 2C:41-1(c)*, blending public authority and private influence to perpetuate a retaliatory campaign. Each entity contributed to a pattern of predicate acts—official misconduct, false reporting, and misuse of governmental process—designed to suppress Plaintiff's protected advocacy, stigmatize his faith-based expression, and maintain unlawful surveillance and control over his family. The collaboration between school administrators and law-enforcement officials created a self-reinforcing pipeline of false referrals and biased communications, sustained through DCPP's complicity and disregard of exculpatory evidence. This hybrid public-private structure served the enterprise's purpose: to intimidate, discredit, and silence Plaintiff's efforts to expose data-privacy violations and discriminatory practices cloaked as child-protection concerns.

# TABLE OF CONTENTS – COUNTS AND CLAIMS

## SECTION A – CIVIL-RIGHTS AND CONSTITUTIONAL CLAIMS

**Count I.** Civil Rights Violation / Retaliation Interfering with Parental Rights
  *(N.J. Const.; NJCRA – N.J.S.A. 10:6-1 et seq.)* – Retaliation for lawful parental advocacy and FERPA/IDEA activity.

**Count II.** Racial Discrimination and Unequal Treatment
  *(Title VI; N.J.S.A. 10:5-1 et seq.)* – Disparate treatment and racial animus in handling of parental concerns.

13

**Count III.** Religious Discrimination and Viewpoint Bias
*(U.S. Const. Amend. I; N.J. Const. Art. I ¶ 3; LAD)* – Hostility toward faith-based speech and religious expression.

**Count IV.** Procedural and Substantive Due Process
*(U.S. Const. Amend. XIV; N.J. Const. Art. I ¶¶ 1 & 10)* – Arbitrary and retaliatory state intrusion without notice or hearing.

**Count V.** Abuse of Process / False Reporting / Defamation
*(Common Law; NJCRA)* – Misuse of child-protection process and publication of false allegations.

**Count VI.** Civil-Rights Conspiracy / RICO Enterprise Coordination
*(N.J.S.A. 2C:41-1 et seq.; Reserved 18 U.S.C. §§ 1961-68)* – Coordinated enterprise among school, police, and DCPP to retaliate and conceal misconduct.

## SECTION B – DATA-PRIVACY AND CONSUMER-PROTECTION CLAIMS

**Count VII.** Negligence / Consumer Fraud / Breach of Fiduciary Duty (Student Data)
*(SOPPA-NJ A4978; CFA – N.J.S.A. 56:8-1 et seq.)* – Failure to safeguard and disclose student-data practices.

**Count VIII.** Fraud and Fraudulent Concealment
*(Common Law; CFA)* – Misrepresentation and concealment of vendor data-sharing and behavioral analytics.

**Count IX.** Failure to Provide a Safe Educational Environment
*(N.J.S.A. 18A:37-1 et seq.)* – Neglect of statutory duty to ensure student safety and well-being.

## SECTION C – NEGLIGENCE AND BOARD ACCOUNTABILITY

**Count X.** Negligence and Breach of Duty (Failure to Supervise / Misreporting)
*(Common Law)* – Failure to act prudently in supervising staff and verifying reports.

**Count XI.** Negligent Hiring, Supervision, and Retention
*(Common Law)* – Retention of biased or retaliatory administrators despite prior notice.

**Count XII.** Failure to Supervise and Breach of Fiduciary Duty by Board of Trustees
*(N.J.S.A. 15A:6-1 et seq.)* – Board inaction and breach of fiduciary obligations of governance.

## SECTION D – EMOTIONAL-DISTRESS AND PERSONAL-INJURY COUNTS

**Count XIII.** Intentional Infliction of Emotional Distress (IIED)
*(Common Law; N.J. Const. Art. I ¶ 1)* – Extreme and outrageous conduct causing severe distress.

**Count XIV.** Negligent Infliction of Emotional Distress (NIED)
*(Common Law)* – Reckless disregard for foreseeable emotional harm.

## SECTION E – CHILD-SPECIFIC CLAIMS (BY GUARDIAN AD LITEM)

**Count XV.** Violation of Child's Right to Privacy and Bodily Integrity
*(N.J. Const. Art. I ¶ 7; Common Law; Reserved 42 U.S.C. § 1983)* – Unauthorized collection and sharing of personal data.

**Count XVI.** Negligence and Failure to Supervise Students (Physical Injury)
*(Common Law; N.J.S.A. 18A:37-1 et seq.)* – Failure to protect the child from foreseeable physical harm.

**Count XVII.** Educational Discrimination and Denial of Equal Access
*(Title VI; Section 504; N.J. LAD)* – Discriminatory treatment in education.

**Count XVIII.** Failure to Obtain Parental Consent / Data-Privacy Violations
*(FERPA; COPPA; N.J.S.A. 18A:36-39)* – Use of behavioral software without lawful parental consent.

**Count XIX.** Intentional or Negligent Infliction of Emotional Distress (Child)
*(Common Law)* – School-based retaliation and ridicule causing child trauma.

**Count XX.** Child Endangerment / Failure to Protect
*(N.J.S.A. 9:6-8.21 et seq.)* – Exposure of child to psychological and physical harm.

## SECTION F – JOINT AND EQUITABLE RELIEF

**Count XXI.** Demand for Injunctive Relief
– Enjoin further retaliation, discrimination, or unauthorized data collection; require oversight and compliance audits.

**Count XXII.** Declaratory Relief
– Declare Defendants' conduct unlawful; expunge retaliatory records; retain jurisdiction for enforcement.

## COUNT I – RETALIATION

### (42 .S.C. § 1983; N.J. Const. Art. I, ¶¶ 1, 3, and 6; and N.J.S.A. 10:5-1 et seq.)

40. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

41. At all relevant times, Plaintiff engaged in **protected activity** under both the United States and New Jersey Constitutions by: (a) raising lawful, faith-based concerns regarding data privacy, student safety, and governmental transparency; (b) filing an Internal Affairs complaint against the Bayonne Police Department concerning their refusal to document credible reports of surveillance and interference; and (c) communicating in good faith with The Hudson School to ensure compliance with student-privacy frameworks such as the **Family Educational Rights and Privacy Act (20 U.S.C. § 1232g)** and the **Children's Online Privacy Protection Act (15 U.S.C. § 6501 et seq.)**, which establish nationally recognized standards for parental consent and data handling.

42. In retaliation for these protected acts of conscience and parental advocacy, Defendants— including The Hudson School, its administrators, and cooperating state and municipal agents—undertook a concerted campaign to discredit and punish Plaintiff. This campaign included: (a) the fabrication and transmission of a false child-abuse report alleging lack of food and mental instability; (b) the coordination of communications between school officials and law enforcement to construct a misleading record of concern; and (c) the manipulation of DCPP investigative procedures to maintain an open case after multiple professional clearances had exonerated Plaintiff and his child.

16

43. Defendants' actions would deter a person of ordinary firmness from continuing to engage in such protected speech and parental advocacy. The cumulative effect of these retaliatory measures—school exclusion, state intrusion, reputational harm, and public stigma—was designed to silence Plaintiff's lawful opposition to institutional misconduct and his religious expression as an ordained minister.

44. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered severe emotional distress, reputational injury, financial harm, disruption to his ministry and advocacy work, and interference with his constitutional rights to speak freely, exercise his faith, and direct the upbringing and education of his child.

45. Defendants' conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's constitutional and statutory rights. Their use of child-protection mechanisms as a tool of punishment and intimidation constitutes **retaliation under color of state law**, actionable pursuant to **42 U.S.C. § 1983**, the **New Jersey Constitution**, and the **New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq.)**.

46. Plaintiff seeks compensatory and punitive damages, declaratory relief, and such other and further remedies as this Court deems just and proper to redress the violations described herein.

## COUNT II – ABUSE OF PROCESS

**(Common Law; N.J. Const. Art. I, ¶¶ 1, 3, and 6; and 42 U.S.C. § 1983)**

47. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

48. At all times relevant, Defendants—including administrators of The Hudson School, members of the Bayonne Police Department, and agents of the New Jersey Division of

17

Child Protection and Permanency ("DCPP")—knowingly and willfully **misused lawful governmental processes** for purposes other than those for which such processes were designed.

49. Specifically, after Plaintiff had already been medically and psychologically cleared through multiple independent evaluations conducted by the Jersey City Medical Center / RWJBarnabas Health Mobile-Crisis Unit, Defendants conspired to resurrect the same disproven mental-health allegations under the guise of a **new "neglect" investigation**. To accomplish this, they fabricated a racially coded "food and clothing" narrative and transmitted it through school channels rather than directly from police, thereby laundering a false premise through a seemingly neutral source.

50. The filing and continuation of that referral—despite the absence of probable cause, credible evidence, or any emergent child-safety concern— constituted a malicious and improper use of statutory authority, violating the **public-policy duties reflected in** *N.J.S.A. 9:6-8.10 et seq.*, which require mandated reporters to act in good faith and with reasonable cause. By disregarding exculpatory medical documentation and inflating speculative claims of "mental decline," Defendants abused DCPP mechanisms to achieve retaliatory objectives wholly unrelated to child welfare.

51. Through this abuse, Defendants intentionally sought to: (a) intimidate Plaintiff into silence regarding his public and faith-based advocacy; (b) stigmatize him as mentally unfit to undermine pending legal and community efforts; and (c) create a lasting paper trail of supposed state concern to discredit his credibility in ongoing litigation and ministry. Each of these objectives lies **outside the legitimate scope** of child-protection authority and thus satisfies the intent element of abuse of process under New Jersey law.

52. The actions described were taken with actual malice and in reckless disregard of Plaintiff's rights. Defendants continued to invoke the process of investigation and court oversight long after knowing that the allegations were "Not Established" and that the child was safe, well nourished, and thriving. Their persistence transformed administrative inquiry into a **tool of punishment and psychological coercion**, thereby violating Plaintiff's rights to due process, equal protection, free exercise of religion, and parental autonomy under both the U.S. and New Jersey Constitutions.

53. As a direct and proximate result of Defendants' abuse of process, Plaintiff sustained severe emotional distress, reputational harm, financial loss, interference with the care and education of his child, and spiritual injury. These damages were foreseeable and were the intended consequence of Defendants' coordinated conduct.

54. Plaintiff therefore seeks compensatory and punitive damages, declaratory relief, and such other equitable and legal remedies as this Court deems just and proper to redress the Defendants' misuse of official process and violation of constitutional and statutory rights.

## COUNT III – DISCRIMINATION AND RELIGIOUS VIEWPOINT BIAS

**(U.S. Const. Amend. I & XIV; N.J. Const. Art. I, ¶¶ 1, 3, 5, and 6; and N.J.S.A. 10:5-1 et seq.)**

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

56. Defendants—including administrators of The Hudson School, agents of the Bayonne Police Department, and personnel of the New Jersey Division of Child Protection and Permanency ("DCPP")—acted jointly and in concert to discriminate against Plaintiff based on his **race**, **religious identity**, and **faith-based viewpoint**. Their actions were

19

motivated, in whole or in part, by animus toward Plaintiff as a Black Christian minister whose advocacy challenged institutional misconduct and technological intrusion.

57. The March 2025 child-abuse referral originated from racially coded stereotypes historically weaponized against Black parents—allegations of inadequate food, improper clothing, and emotional instability—used to imply neglect where none existed. These claims deliberately invoked racialized imagery of deprivation and unfitness, even though all contemporaneous evidence and evaluations confirmed that Plaintiff's child was healthy, well-fed, and properly cared for.

58. Defendants further demonstrated **religious bias and viewpoint hostility** by mocking or dismissing Plaintiff's expressions of prayer, discernment, and scriptural guidance as signs of delusion or instability. Rather than respecting his faith as constitutionally protected expression, Defendants pathologized it—treating spiritual language and discernment as evidence of mental illness. This conduct violated the Free Exercise and Free Speech Clauses of the First Amendment and Article I, Paragraphs 3 and 6 of the New Jersey Constitution.

59. Defendants' actions also violated the **Equal Protection Clause** of the Fourteenth Amendment and New Jersey's Law Against Discrimination (*N.J.S.A. 10:5-1 et seq.*) by subjecting Plaintiff to disparate treatment not experienced by similarly situated non-Black or non-religious parents. Other parents who raised privacy or educational concerns were met with dialogue; Plaintiff was met with police escalation, child-protection referral, and defamatory insinuations of mental instability.

60. By conflating Plaintiff's religious conviction with psychological impairment, Defendants effectively punished constitutionally protected expression. Their actions were not neutral

or generally applicable but targeted specifically at Plaintiff's religious identity and the content of his speech, thereby constituting **viewpoint discrimination** and **retaliation under color of law**.

61. 37. The discriminatory and retaliatory acts described herein were intentional, malicious, and carried out with reckless disregard for Plaintiff's rights. The joint participation of school, police, and DCPP personnel demonstrates coordinated bias operating under color of state law.

62. As a direct and proximate result, Plaintiff suffered severe emotional distress, reputational damage, interference with his ministry and advocacy work, and impairment of his relationship with his child and community. These injuries were foreseeable and were the intended outcome of Defendants' discriminatory conduct.

63. Plaintiff therefore seeks compensatory and punitive damages, declaratory judgment, and injunctive relief to prohibit further discriminatory or retaliatory conduct, along with such other relief as this Court deems just and equitable to remedy violations of his federal and state constitutional rights.

## COUNT IV – NEW JERSEY RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) VIOLATIONS
**(N.J.S.A. 2C:41-1 et seq.; Reserved Federal Parallels, 18 U.S.C. §§ 1961–1968)**

64. Plaintiff asserts this Count under the New Jersey RICO statute and expressly reserves the right to amend to include corresponding federal claims if later discovery establishes predicate acts within interstate commerce or federal jurisdiction.

65. Plaintiff realleges and incorporates all prior paragraphs.

66. Defendants—including The Hudson School and its administrators, the Bayonne Police Department and individual officers, agents of the Division of Child Protection and

21

Permanency, and associated private contractors—constituted an **enterprise** within the meaning of N.J.S.A. 2C:41-1(c), functioning through a continuing association-in-fact to suppress Plaintiff's protected activity and maintain control over digital-privacy disclosures.

67. From at least 2024 through 2025, these Defendants engaged in a **pattern of racketeering activity**, including but not limited to:

(a) *Official misconduct* (N.J.S.A. 2C:30-2) by knowingly misusing their offices to fabricate or sustain false neglect allegations;

(b) *False swearing / tampering with public records* (N.J.S.A. 2C:28-2, -7) through the preparation and transmission of falsified or misleading DCPP referral documents;

(c) *Criminal coercion* (N.J.S.A. 2C:13-5) by leveraging state authority to compel Plaintiff's silence and conformity; and

(d) *Mail and wire fraud equivalents* through electronic transmission of materially false statements among state and private actors to sustain the enterprise's objectives.

68. The acts described were **related and continuous**, sharing the same purpose—to retaliate against Plaintiff for his faith-based advocacy, suppress his constitutional speech, and protect the enterprise's institutional and financial interests.

69. Each Defendant **knowingly participated** in and benefitted from the enterprise's affairs by using official channels and child-protection processes to inflict reputational and economic harm on Plaintiff and to deter further disclosure of misconduct.

70. As a direct and proximate result of this pattern of racketeering activity, Plaintiff suffered injury to his reputation, ministry, livelihood, and property interests within the meaning of N.J.S.A. 2C:41-4(c).

71. Pursuant to N.J.S.A. 2C:41-4(c), Plaintiff seeks **threefold damages**, costs, attorney's fees, and such equitable and declaratory relief as this Court deems just and proper to dismantle the unlawful enterprise and prevent further misuse of governmental power.

## COUNT V – VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS

**(U.S. Const. Amend. XIV; N.J. Const. Art. I, ¶¶ 1 & 10)**

72. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73. The Fourteenth Amendment and Article I of the New Jersey Constitution guarantee every citizen the rights to fair process, personal liberty, and protection from arbitrary governmental interference. These guarantees include the **fundamental liberty interest in the care, custody, and upbringing of one's child** and the right to be free from state actions that are irrational, discriminatory, or undertaken without lawful cause.

74. Defendants—including The Hudson School, the Bayonne Police Department, and DCPP—collectively deprived Plaintiff of those rights by initiating and perpetuating investigations, referrals, and school-based interrogations **without notice, consent, or credible evidence of risk**. They ignored medical and clinical clearances, withheld exculpatory information, and failed to afford Plaintiff the opportunity to rebut or review the allegations prior to adverse action.

75. This conduct violated **procedural due process** because: (a) Plaintiff was not provided timely or adequate notice of the allegations before state intrusion occurred; (b) Defendants conducted school and home contacts without lawful authorization or exigency; (c) DCPP refused to credit or disclose its own exculpatory findings;

23

and[SEP]      (d)   Plaintiff was denied a meaningful opportunity to be heard before his parental and reputational interests were impaired.

76. Defendants also violated **substantive due process** by engaging in conduct that "shocks the conscience"—using child-protection authority to retaliate against protected speech, to stigmatize Plaintiff's faith-based advocacy, and to intrude upon his private family life absent any legitimate state interest. Their actions were arbitrary, capricious, and motivated by bias and retaliation rather than child safety.

77. By treating Plaintiff's constitutionally protected parenting and religious expression as grounds for suspicion, Defendants acted in a manner that was **so egregious and outrageous** as to offend the community's sense of fairness and decency. Such conduct constitutes a clear deprivation of liberty under color of state law.

78. As a direct and proximate result, Plaintiff suffered loss of reputation, emotional distress, disruption of family life, and interference with his ministry and livelihood. The injuries were foreseeable and were the natural consequence of Defendants' systemic disregard of procedural and substantive safeguards.

79. Plaintiff therefore seeks declaratory and injunctive relief, compensatory and punitive damages, and such other remedies as this Court deems just and proper to vindicate his due-process rights and to prevent further arbitrary governmental interference with his family and faith.

## COUNT VII – NEGLIGENCE / CONSUMER FRAUD / BREACH OF FIDUCIARY DUTY (STUDENT DATA)
**(SOPPA-NJ A4978; N.J.S.A. 56:8-1 et seq.; Common Law)**

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

81. Defendants owed a statutory and fiduciary duty to students and parents to safeguard educational data, to execute written vendor agreements compliant with the Student Online Personal Protection Act (SOPPA-NJ, A4978), and to ensure that third-party learning platforms were used solely for legitimate educational purposes. Defendants further owed a duty to make truthful representations concerning their data-handling and privacy practices.

82. By failing to implement adequate data-security measures, permitting unauthorized profiling and behavioral analytics, and misrepresenting or concealing the true extent of data sharing with outside vendors, Defendants breached their fiduciary, statutory, and common-law duties. Such conduct constitutes an **unlawful practice** under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.) and negligence under New Jersey common law.

83. As a direct and proximate result, Plaintiff and his child sustained **ascertainable loss**, including loss of privacy, increased risk of identity exposure, emotional distress, and the cost of monitoring and mitigating improper data use.

84. Plaintiff seeks compensatory and treble damages, attorney's fees, and costs as permitted by the Consumer Fraud Act, as well as **injunctive relief** mandating independent data-security audits, deletion of improperly held data, disclosure of vendor relationships, and future compliance reporting.

## COUNT VIII – FRAUD AND FRAUDULENT CONCEALMENT
**(Common Law; N.J. Consumer Fraud Act – N.J.S.A. 56:8-1 et seq.)**

85. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86. Defendants knowingly and willfully misrepresented that the student-data platforms and digital-learning vendors used by The Hudson School were secure, compliant with applicable privacy laws, and limited to educational purposes. Defendants further concealed the existence and terms of vendor contracts, suppressed material facts regarding behavioral-analytics tracking and third-party data sharing, and made these omissions with intent to induce parental reliance and continued payment of tuition and participation in school programs.

87. Plaintiff reasonably relied on Defendants' false assurances and omissions in deciding to entrust his child's personal information and to continue enrollment. Such conduct constitutes actionable common-law fraud and deceptive business practices under the **New Jersey Consumer Fraud Act**, resulting in **ascertainable loss**, including financial injury, loss of privacy, and emotional distress.

88. Plaintiff seeks compensatory, statutory, and punitive damages; attorney's fees and costs as permitted by the CFA; and **injunctive relief** compelling full disclosure of all vendor relationships, data-sharing practices, and compliance certifications, together with independent auditing and future transparency measures.

## COUNT IX – FAILURE TO PROVIDE A SAFE EDUCATIONAL ENVIRONMENT
**(N.J.S.A. 18A:37-1 et seq.; Common Law Duty of Care)**

89. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90. Pursuant to *N.J.S.A. 18A:37-1 et seq.*, Defendants owed a statutory and common-law duty to maintain a safe, orderly, and non-hostile educational environment that protects

26

students from retaliation, discrimination, and emotional harm, and that fosters open, respectful communication with parents and guardians.

91. Defendants breached that duty by allowing and participating in conduct that created an atmosphere of fear, stigmatization, and reprisal — including the misuse of mandated-reporting mechanisms, the circulation of false or retaliatory narratives, and the failure to intervene when administrators' actions endangered the child's emotional and educational stability.

92. As a direct and proximate result of Defendants' indifference and misconduct, the child's well-being, academic progress, and sense of safety at school were significantly impaired, and Plaintiff's parental relationship with the institution was damaged.

93. Plaintiff seeks compensatory damages for resulting harm and **injunctive relief** requiring Defendants to implement comprehensive policy reforms, staff training, and monitoring systems to ensure student safety, prevent retaliation, and promote transparent parental communication consistent with New Jersey law and professional standards of care.

## COUNT X – NEGLIGENCE AND BREACH OF DUTY (FAILURE TO SUPERVISE / MISREPORTING)
**(Common Law)**

94. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Defendants, including The Hudson School and its administrators, owed Plaintiff and his child a duty of reasonable care to investigate parental concerns prudently, communicate truthfully, and ensure that any mandated reports to governmental authorities were accurate, verified, and made in good faith. This duty arises from the special relationship

27

between schools and families, which requires honesty, fairness, and due diligence in handling sensitive child-welfare matters.

96. Defendants breached that duty by failing to supervise staff adequately, by escalating unverified or speculative allegations, and by disseminating false or misleading information to external agencies without reasonable cause. Such conduct was reckless, foreseeably harmful, and fell below the standard of care expected of professional educators and administrators.

97. As a direct and proximate result, Plaintiff suffered reputational and emotional injury, loss of trust within the educational community, and disruption to his child's schooling and emotional stability.

98. Plaintiff seeks **compensatory damages** for these harms and **injunctive relief** requiring Defendants to implement proper oversight, verification, and reporting protocols to ensure adherence to lawful and good-faith procedures when handling future parental or student concerns.

## COUNT XI – NEGLIGENT HIRING, SUPERVISION, AND RETENTION
**(Common Law; N.J.S.A. 15A:6-1 et seq.)**

99. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100.　　The Board Defendants owed fiduciary and common-law duties of care, loyalty, and oversight to ensure that The Hudson School was administered by competent, fair, and law-abiding personnel. Pursuant to *N.J.S.A. 15A:6-1 et seq.*, the Board was required to

28

supervise the actions of its officers and administrators, investigate credible complaints, and take corrective action when misconduct was known or reasonably suspected.

101. The Board Defendants knew or, in the exercise of reasonable diligence, **should have known** of prior complaints, bias, and retaliatory conduct by administrators Rebekah Sollitto and Emily Ford Systma, yet failed to investigate, discipline, or remove them. This negligent hiring, supervision, and retention permitted ongoing discrimination, retaliation, and misuse of reporting processes that foreseeably harmed Plaintiff and his child.

102. As a direct and proximate result of the Board's breach of its duties, Plaintiff suffered reputational and emotional injury, disruption to his child's education, and loss of confidence in the school's governance.

103. Plaintiff seeks **compensatory and punitive damages** for the harm caused and **injunctive relief** requiring an independent personnel and governance review, adoption of corrective oversight procedures, and continuing monitoring to prevent recurrence of retaliatory or discriminatory conduct.

## COUNT XII – FAILURE TO SUPERVISE AND BREACH OF FIDUCIARY DUTY BY BOARD OF TRUSTEES
**(N.J.S.A. 15A:6-1 et seq.; Common Law)**

104. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

105. The Board Defendants of The Hudson School owed fiduciary duties of **care, loyalty, and oversight** under both common law and *N.J.S.A. 15A:6-1 et seq.* to ensure that the School operated in compliance with law, maintained ethical governance, and protected students and families from harm. These duties required active supervision of administrators, truthful public communications, and prompt investigation of retaliation or misconduct.

106. By ignoring credible warning signs, failing to investigate known or suspected retaliation and discrimination, approving or acquiescing in misleading communications, and neglecting to establish adequate compliance controls, the Board Defendants breached their fiduciary obligations. Their inaction and ratification of wrongful conduct allowed continuing retaliation, data-privacy violations, and reputational harm to occur.

107. As a **direct and proximate result** of these breaches, Plaintiff suffered reputational, emotional, and economic injury and loss of trust in the School's governance integrity.

108. Plaintiff seeks **compensatory and punitive damages**, together with **equitable relief** mandating governance reforms consistent with nonprofit-school standards, including independent oversight audits, board-level compliance training, adoption of anti-retaliation and data-privacy policies, and periodic public reporting to ensure accountability and transparency.

## COUNT XIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Common Law; N.J. Const. Art. I, ¶ 1)**

109. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

110. Defendants' actions—individually and collectively—were extreme, outrageous, and beyond all bounds of decency tolerated in a civilized community. They intentionally or recklessly subjected Plaintiff and his minor child to public humiliation, reputational harm, and emotional trauma by fabricating and perpetuating false narratives of neglect and instability.

111. Defendants knew, or should have known, that their conduct would cause severe emotional distress. Each referral, investigation, and defamatory insinuation was undertaken not for child protection, but for the purpose of retaliation, intimidation, and control. Despite knowing that all clinical and factual evidence exonerated Plaintiff, Defendants prolonged the case and continued to communicate stigmatizing allegations to others within the community and among cooperating agencies.

112. Defendants' conduct included:

(a)   knowingly transmitting false reports of neglect and mental instability after official clearances;

(b)   using DCPP procedures and police authority as harassment tools;

(c)   mocking or pathologizing Plaintiff's faith expressions; and

(d)   causing repeated intrusive visits and school-based interrogations that traumatized both parent and child.

113. As a direct and proximate result of these acts, Plaintiff suffered severe emotional distress, including anxiety, loss of sleep, spiritual anguish, reputational injury, and continuing fear of state retaliation. The child likewise experienced emotional harm, confusion, and loss of security in his educational environment.

114. Defendants' conduct was willful, wanton, and carried out with actual malice, warranting an award of **compensatory and punitive damages** to deter future misconduct and to redress the profound harm inflicted upon Plaintiff and his family.

115. Plaintiff therefore seeks judgment against all Defendants, jointly and severally, for compensatory and punitive damages, costs, attorney's fees where permitted by law, and such other relief as this Court deems just and proper.

## COUNT XIV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)
### (Common Law)

116. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

117. Defendants owed Plaintiff and his child a duty to act with reasonable care in their communications, investigations, and handling of parental and student matters. Defendants breached that duty through negligent and reckless disregard for the foreseeable emotional impact of their actions—including the false escalation of reports, dissemination of stigmatizing information, and failure to protect the family from retaliatory conduct.

118. Defendants knew or should have known that such actions would cause severe emotional distress, humiliation, and anxiety to Plaintiff and his child. Their failure to act reasonably under known circumstances constitutes negligence under New Jersey law. As a direct and proximate result, Plaintiff and his child experienced serious psychological and emotional suffering, including sleep disruption, fear, loss of trust in school institutions, and continuing distress.

119. Plaintiff seeks **compensatory damages** for emotional and psychological injury and related losses, together with **injunctive relief** requiring Defendants to adopt and enforce procedures designed to prevent future emotional or retaliatory harm to students and families.

## COUNT XV – VIOLATION OF CHILD'S RIGHT TO PRIVACY AND BODILY INTEGRITY
### (N.J. Const. Art. I ¶ 7; Common Law; Reserved Federal Parallels – 42 U.S.C. § 1983)

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

32

121. The minor child possesses an independent constitutional and common-law right to privacy and bodily integrity, including the right to control personal, educational, and biometric information. Defendants, acting through The Hudson School and its administrators, **collected, transmitted, and exposed** the child's personal identifiers and behavioral data to third-party vendors and outside entities without lawful parental consent or statutory authorization. Such conduct violated the privacy protections guaranteed by **Article I, Paragraph 7 of the New Jersey Constitution** and established New Jersey precedent safeguarding minors' personal information.

122. Plaintiff further alleges, upon information and belief, that certain communications and data transmissions were shared with governmental or quasi-governmental actors in a manner functionally equivalent to state action. Plaintiff therefore **reserves the right to amend** this Complaint under Rule 4:9-1 to assert corresponding claims under **42 U.S.C. § 1983** should discovery confirm joint participation or direction by state agencies or officials.

123. As a direct and proximate result of Defendants' actions, the child's privacy, dignity, and sense of personal security were compromised, causing emotional and psychological harm.

124. Plaintiff seeks **declaratory and injunctive relief** requiring the deletion and expungement of unlawfully shared or retained data, **compensatory and punitive damages** for the invasion of privacy and resulting harm, and such other relief as the Court deems just and proper to protect the child's right to bodily and informational integrity.

## COUNT XVI – NEGLIGENCE AND FAILURE TO SUPERVISE STUDENTS (PHYSICAL INJURY)
**(Common Law; N.J.S.A. 18A:37-1 et seq.)**

125. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

126. Defendants owed a statutory and common-law duty to provide reasonable and adequate supervision of students and to maintain a safe educational environment consistent with *N.J.S.A. 18A:37-1 et seq.* and prevailing professional standards. This duty required staff to prevent foreseeable hazards, respond promptly to safety concerns, and protect children from physical and emotional harm while under the School's care.

127. Defendants breached that duty by failing to exercise due care in supervising the child and by allowing conditions that resulted in a preventable physical injury and associated emotional trauma. Such negligence and lack of supervision were foreseeable and directly caused the child's injury and disruption to his educational stability.

128. As a direct and proximate result of Defendants' negligence, the child suffered physical pain, emotional distress, and educational setback. Plaintiff seeks recovery for **medical expenses, pain and suffering, emotional damages, and loss of educational stability,** together with such other relief as the Court deems just and proper.

## COUNT XVII – EDUCATIONAL DISCRIMINATION AND DENIAL OF EQUAL ACCESS
**(Title VI of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act; New Jersey Law Against Discrimination – N.J.S.A. 10:5-1 et seq.)**

129. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

130. Defendants, as recipients of public funding and participants in state-administered educational and special-services programs, were obligated under **Title VI, Section 504,** and the **New Jersey Law Against Discrimination (LAD)** to provide equal educational

34

access and to refrain from discrimination on the basis of race, religion, or perceived disability.

131. Defendants violated these obligations by subjecting the child to **disparate and stigmatizing treatment**, including exclusion from opportunities available to other students, retaliatory labeling, and biased disciplinary or evaluative practices rooted in racial, religious, and disability-based stereotypes. Such actions denied the child equal participation and educational benefit, contrary to the guarantees of federal and state civil-rights law.

132. As a **direct and proximate result**, the child suffered emotional distress, educational regression, and loss of confidence and trust in his learning environment.

133. Plaintiff seeks **declaratory and injunctive relief** requiring Defendants to cease discriminatory practices, implement equitable policies, and provide staff training and compliance oversight, as well as **compensatory damages and attorney's fees** as permitted by statute.

## COUNT XVIII – FAILURE TO OBTAIN PARENTAL CONSENT / DATA-PRIVACY VIOLATIONS
**(Family Educational Rights and Privacy Act – 20 U.S.C. § 1232g; Children's Online Privacy Protection Act – 15 U.S.C. § 6501 et seq.; N.J.S.A. 18A:36-39)**

134. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

135. Defendants, as educational administrators and data custodians, owed statutory and regulatory duties reflected in the **Family Educational Rights and Privacy Act (20 U.S.C. § 1232g)**, the **Children's Online Privacy Protection Act (15 U.S.C. § 6501 et**

seq.), and **N.J.S.A. 18A:36-39**, all of which define the duty to obtain verifiable parental consent before collecting, storing, or transmitting a student's personal information.

136. Defendants breached these duties by deploying and integrating third-party software applications and behavioral-analytics systems without notice or consent, thereby enabling unauthorized data collection, tracking, and profiling of the child's educational and biometric information. Such conduct constituted unlawful disclosure and surveillance in violation of federal and state parental-consent statutes.

137. As a **direct and proximate result**, Plaintiff and his child suffered loss of privacy, exposure of confidential information, and emotional distress arising from the misuse of personal data.

138. Plaintiff seeks **compensatory and punitive damages, statutory penalties**, and **injunctive relief** requiring Defendants to:

    (a) cease all unauthorized data collection and sharing;

    (b) delete or destroy improperly gathered student information;

    (c) conduct independent privacy and compliance audits; and

    (d) implement transparent parental-consent and notification procedures consistent with the student-privacy standards reflected in **FERPA (20 U.S.C. § 1232g), COPPA (15 U.S.C. § 6501 et seq.)**, and **New Jersey law.**

## COUNT XIX – INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (CHILD)
(Common Law)

139. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

140. Defendants owed the minor child a duty to provide a safe, supportive, and non-hostile educational environment and to refrain from conduct that would foreseeably cause emotional or psychological harm. Instead, Defendants, through acts of ridicule, exclusion, and retaliatory behavior, engaged in conduct that was extreme, outrageous, and wholly inconsistent with their duties as educators and caretakers.

141. Such actions were either **intentional**—undertaken with knowledge that they would cause emotional harm—or **negligent**, in that Defendants recklessly disregarded the foreseeable emotional impact of their behavior. As a direct and proximate result, the child suffered severe emotional distress, fear, anxiety, and loss of trust in the school environment, requiring counseling and therapeutic intervention.

142. Plaintiff seeks **compensatory damages**, including counseling and treatment costs, and **injunctive relief** requiring Defendants to implement trauma-informed practices, staff training, and oversight protocols to prevent further emotional or retaliatory harm to the child and similarly situated students.

## COUNT XX – CHILD ENDANGERMENT / FAILURE TO PROTECT
**(N.J.S.A. 9:6-8.21 et seq.; Common Law)**

143. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

144. Defendants owed the minor child a statutory and common-law duty to protect students from foreseeable physical, psychological, and emotional harm. This duty is recognized in the **public-policy objectives of N.J.S.A. 9:6-8.21 et seq.**, which establish the State's commitment to safeguard children from abuse and neglect.

145. Defendants breached that duty by disregarding safety obligations, retaliating against the child and parent for protected advocacy, and permitting conditions that exposed the child to continued psychological distress and risk of physical harm. Such failures constituted neglect and endangerment within the meaning and spirit of New Jersey's child-protection laws.

146. As a **direct and proximate result**, the child suffered emotional trauma, fear, and physical vulnerability, as well as disruption to his educational stability and sense of security.

147. Plaintiff seeks **compensatory and punitive damages** for these injuries and **injunctive relief** requiring Defendants to institute staff training, adopt safety and anti-retaliation protocols, and establish independent oversight to ensure the protection and well-being of all students in their care.

## COUNT XXI – DEMAND FOR INJUNCTIVE RELIEF
**(N.J. Ct. R. 4:52-1; Equitable Authority of the Court)**

148. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

149. Pursuant to the equitable powers of this Court and **Rule 4:52-1**, Plaintiff seeks immediate and permanent injunctive relief to prevent continuing and irreparable harm to himself, his child, and other similarly situated families. Monetary damages alone are inadequate to remedy the ongoing violations of civil, statutory, and constitutional rights described above.

150. Plaintiff therefore requests an injunction:

(a) **Enjoining Defendants** and all persons acting in concert with them from further acts

38

of retaliation, discrimination, or interference with Plaintiff's parental rights and religious expression;

(b) **Prohibiting** any continued unauthorized collection, storage, or dissemination of student data or personally identifiable information;

(c) **Requiring** independent oversight and compliance audits of the School's data-privacy, reporting, and retaliation-prevention practices; and

(d) **Mandating** the adoption and implementation of corrective policies, staff training, and monitoring systems to ensure compliance with state and federal law and to protect the safety, privacy, and well-being of all students.

151. Plaintiff further requests that the Court retain jurisdiction to supervise and enforce ongoing compliance with its orders and to impose additional equitable remedies as justice may require.

## COUNT XXII – DECLARATORY RELIEF
**(N.J.S.A. 2A:16-50 et seq.; N.J. Ct. R. 4:42-3)**

152. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

153. Pursuant to the **New Jersey Declaratory Judgment Act**, *N.J.S.A. 2A:16-50 et seq.*, and the equitable authority of this Court, Plaintiff seeks a judicial declaration to resolve the present and continuing controversy between the parties regarding the legality of Defendants' conduct. A declaration is necessary to determine the parties' rights and duties and to ensure future compliance with applicable law.

154. Plaintiff respectfully requests that the Court:

(a) Declare that Defendants' actions and omissions violated Plaintiff's and his

39

child's **constitutional, statutory, and common-law rights** under New Jersey law;

(b) Declare that the **false and retaliatory reports and records** generated or maintained by Defendants are **void, unlawful, and of no legal effect**;

(c) Order that such records be **expunged, sealed, or corrected** to remove all defamatory and inaccurate information; and

(d) Retain **continuing jurisdiction** to monitor compliance with the Court's orders and to grant further declaratory or equitable relief as justice requires.

---

## DAMAGES AND RELIEF REQUESTED

As a direct and proximate result of the wrongful conduct described in the foregoing Counts, **Plaintiff** sustained economic, emotional, reputational, and constitutional injuries, and **his child** sustained independent harm, as follows:

155. **Plaintiff's Injuries** include, but are not limited to:

(a) loss of educational access and school partnership for his child;

(b) loss of trust and standing within the school community due to false and defamatory reporting;

(c) humiliation, emotional distress, anxiety, and mental anguish;

(d) time, expense, and disruption caused by repeated DCPP investigations and police contacts;

(e) interference with Plaintiff's professional and ministerial reputation; and

(f) deprivation of his rights to privacy, due process, family autonomy, and free exercise

40

of religion guaranteed by the New Jersey Constitution and the New Jersey Civil Rights Act.

156. **Child's Injuries.** Plaintiff's child likewise suffered psychological distress, educational instability, and loss of a secure learning environment, warranting compensatory damages and injunctive protection under New Jersey law.

157. **Culpability.** Defendants' conduct was willful, wanton, malicious, and undertaken in reckless disregard of Plaintiff's and his child's protected rights, warranting an award of punitive and exemplary damages.

158. **Economic Losses.** Plaintiff incurred and continues to incur financial losses, including legal expenses, technology replacement costs, counseling expenses, and lost work time, all foreseeable consequences of Defendants' acts.

159. **Statutory Entitlements.** Pursuant to the *New Jersey Civil Rights Act* (N.J.S.A. 10:6-1 et seq.), *Law Against Discrimination* (N.J.S.A. 10:5-1 et seq.), and *Consumer Fraud Act* (N.J.S.A. 56:8-1 et seq.), Plaintiff is entitled to compensatory and statutory damages, including treble damages, interest, costs of suit, and reasonable attorney's fees.

160. **Jurisdictional Amount.** Plaintiff seeks compensatory, statutory, and punitive damages in an amount to be determined by the trier of fact, but in any event exceeding the jurisdictional limits of the Special Civil Part of this Court.

161. **Equitable and Declaratory Relief.** Plaintiff further seeks:

(a) a judicial declaration that Defendants violated Plaintiff's civil, religious, and parental rights under New Jersey law;

(b) an injunction prohibiting further retaliation, defamation, or misuse of child-protection or law-enforcement channels against Plaintiff or his family;

41

(c) an order requiring *The Hudson School* and its *Board of Trustees* to implement written policies and staff training on data privacy, mandated-reporting protocols, and parent-communication procedures consistent with NJAIS/NAIS standards;

(d) an independent privacy and discrimination compliance audit of The Hudson School and its vendor relationships; and

(e) expungement of all false or unsubstantiated DCPP records originating from Defendants' reports.

162. **Trial Demand.** Plaintiff demands **trial by jury** on all triable issues and such further relief as the Court deems just and equitable, including all remedies available at law or in equity to prevent ongoing injury and vindicate his rights as a parent and citizen of New Jersey.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Tony Parrish**, individually and on behalf of his minor child **JP** (by Guardian ad Litem), respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief on all causes of action:

### A. Declaratory Relief

1. Declare that Defendants' actions violated Plaintiff's and JP's rights under the United States and New Jersey Constitutions and applicable statutes, including the *NJCRA, LAD, CFA,* and *FERPA.*

2. Declare that the child-abuse and neglect allegations reported by Defendants were false, retaliatory, and **"Not Established"** under N.J.A.C. 3A:10-7.3(c)(3), and order expungement or permanent sealing of all related records.

## B. Injunctive Relief

3. Enjoin Defendants, their officers, employees, agents, successors, and assigns from:

   (a) submitting or causing the submission of any false or retaliatory report to DCPP or other authorities;

   (b) interfering with Plaintiff's parental rights, religious expression, or lawful advocacy;

   (c) accessing, sharing, or using JP's educational or medical data without written parental consent; and

   (d) engaging in any further acts of retaliation, discrimination, or harassment.

4. Order Defendants to implement corrective measures, including independent compliance audits, anti-bias and privacy training, data-handling reforms, and transparent parental-consent procedures.

5. Appoint or require an independent monitor or ombudsperson to ensure ongoing compliance and protection of parental and child rights.

## C. Compensatory and Statutory Damages

6. Award compensatory damages to Plaintiff and JP for emotional distress, reputational harm, loss of privacy, and loss of educational opportunities.

7. Award treble damages and attorney's fees as permitted by the *CFA*, *New Jersey RICO* (N.J.S.A. 2C:41-1 et seq.), and other applicable statutes.

43

## D. Punitive and Exemplary Damages

8.  Award punitive and exemplary damages against all individual and institutional Defendants whose conduct was willful, malicious, or in reckless disregard of Plaintiff's and JP's rights.

## E. Attorney's Fees, Costs, and Interest

9.  Award reasonable attorney's fees, litigation costs, and pre- and post-judgment interest pursuant to 42 U.S.C. § 1988, the *NJCRA*, and other applicable laws.

## F. Additional or Alternative Relief

10. Grant such other and further relief as this Court deems just and proper to restore Plaintiff and JP to the full enjoyment of their constitutional, statutory, and common-law rights.

---

**Respectfully submitted,**

/s/ Tony Parrish
**Tony Parrish, Plaintiff, Pro Se**
[PO Box 806 / Bayonne / 07002]
[17ChildOfGod@protonmail.com / 646-389-8994]

**Dated:** 10-28-25

# VERIFICATION AND CERTIFICATION

I, **Tony Parrish**, am the Plaintiff in the foregoing Verified Complaint.
I hereby certify that the statements made in this Complaint are true to the best of my knowledge, information, and belief. I understand that if any of the statements are willfully false, I am subject to punishment.

Pursuant to **Rule 1:4-4(b)** and **Rule 1:38-7(c)** of the New Jersey Court Rules, I further certify that confidential personal identifiers have been redacted from documents submitted to the Court and that any such identifiers will be maintained in a separate confidential file not available to the public.

I further certify that I have not, to my knowledge, previously filed any action or proceeding involving the same subject matter or parties, except as noted herein. If any related matter is subsequently filed, I will promptly notify the Court in writing.

**Respectfully submitted,**

/s/ Tony Parrish
**Tony Parrish, Plaintiff Pro Se**
Address: PO Box 806
Bayonne/NJ/07002
Email: 17ChildOfGod@protonmail.com
Telephone: 646-389-8994

**Dated:** 10-28-25